1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PHYLLIS LOUISE THOMPSON,    ) Case No. EDCV 14-1803-JPR
                           )
                Plaintiff, )
                           )
        vs.                ) MEMORANDUM OPINION AND ORDER
                           ) AFFIRMING THE COMMISSIONER
                           )
CAROLYN W. COLVIN,         )
Acting Commissioner of     )
Social Security,           )
                           )
                Defendant. )
                           )

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed May 22, 2015, which the Court has taken under submission without oral argument. For the reasons discussed below, the Commissioner's decision is affirmed and judgment is entered in her favor.

1  **II.   BACKGROUND**

2      Plaintiff was born in 1955.  (Administrative Record ("AR")

3  167, 188.)  She completed high school and some community college.

4  (AR 33.)  She previously worked as a medical transcriptionist,

5  cook, and home health aide.  (AR 33-34, 192, 215-20.)

6      On January 25, 2011, Plaintiff filed applications for DIB

7  and SSI, alleging she had been disabled since June 2, 2010,

8  because of "seeing problems."  (AR 167-74, 191.)  In a later

9  disability report, she reported a "[m]ore difficult time seeing,"

10  "flared up" osteoarthritis, "out of control" diabetes, a head

11  injury, and depression.  (AR 243.)  After Plaintiff's

12  applications were denied, she requested a hearing before an

13  Administrative Law Judge.  (AR 103.)  A hearing was held on

14  October 29, 2012, at which Plaintiff, who was then unrepresented,

15  testified, as did a vocational expert and a medical expert.  (AR

16  28-51.)  On February 9, 2013, the ALJ issued a written decision

17  finding Plaintiff not disabled.  (AR 12-22.)  On February 25,

18  2013, Plaintiff, through counsel, requested review of the ALJ's

19  decision (AR 8), and she later submitted additional evidence in

20  support of her claims (AR 540-42).  On July 3, 2014, after

21  considering the new evidence, the Appeals Council denied review.

22  (AR 1-5.)  This action followed.

23  **III. STANDARD OF REVIEW**

24      Under 42 U.S.C. § 405(g), a district court may review the

25  Commissioner's decision to deny benefits.  The ALJ's findings and

26  decision should be upheld if they are free of legal error and

27  supported by substantial evidence based on the record as a whole.

28  See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra

1  <u>v. Astrue</u>, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial
2  evidence means such evidence as a reasonable person might accept
3  as adequate to support a conclusion.  <u>Richardson</u>, 402 U.S. at
4  401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007).
5  It is more than a scintilla but less than a preponderance.
6  <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec.</u>
7  <u>Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether
8  substantial evidence supports a finding, the reviewing court
9  "must review the administrative record as a whole, weighing both
10 the evidence that supports and the evidence that detracts from
11 the Commissioner's conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715,
12 720 (9th Cir. 1996).  "If the evidence can reasonably support
13 either affirming or reversing," the reviewing court "may not
14 substitute its judgment" for the Commissioner's.  <u>Id.</u> at 720-21.
15 **IV.   THE EVALUATION OF DISABILITY**
16      People are "disabled" for purposes of receiving Social
17 Security benefits if they are unable to engage in any substantial
18 gainful activity owing to a physical or mental impairment that is
19 expected to result in death or which has lasted, or is expected
20 to last, for a continuous period of at least 12 months.  42
21 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257
22 (9th Cir. 1992).

23      A.   <u>The Five-Step Evaluation Process</u>
24      The ALJ follows a five-step sequential evaluation process in
25 assessing whether a claimant is disabled.  20 C.F.R.
26 §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821,
27 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first
28 step, the Commissioner must determine whether the claimant is

3

1  currently engaged in substantial gainful activity; if so, the
2  claimant is not disabled and the claim must be denied.
3  §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the second step
4  requires the Commissioner to determine whether the claimant has a
5  "severe" impairment or combination of impairments significantly
6  limiting her ability to do basic work activities; if not, a
7  finding of not disabled is made and the claim must be denied.
8  §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant has a
9  "severe" impairment or combination of impairments, the third step
10 requires the Commissioner to determine whether the impairment or
11 combination of impairments meets or equals an impairment in the
12 Listing of Impairments ("Listing") set forth at 20 C.F.R. part
13 404, subpart P, appendix 1; if so, disability is conclusively
14 presumed and benefits are awarded.  §§ 404.1520(a)(4)(iii),
15 416.920(a)(4)(iii).

16      If the claimant's impairment or combination of impairments
17 does not meet or equal an impairment in the Listing, the fourth
18 step requires the Commissioner to determine whether the claimant
19 has sufficient residual functional capacity ("RFC")[1] to perform
20 her past work; if so, the claimant is not disabled and the claim
21 must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The
22 claimant has the burden of proving she is unable to perform past
23 relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets
24 that burden, a prima facie case of disability is established.
25 Id.  If that happens or if the claimant has no past relevant
26
27      [1] RFC is what a claimant can do despite existing exertional
28 and nonexertional limitations.  §§ 404.1545, 416.945; see Cooper v.
   Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 2, 2011, the onset date determined by the ALJ.[2]  (AR 14-15.)  At step two, he concluded that Plaintiff had the severe impairments of "diabetes, cataracts status post surgical removal, [and] early diabetic sensory neuropathy." (AR 15.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing.  (AR 17.)  At step four, he found that Plaintiff had the RFC to perform the "full range of sedentary work." (Id.)  Based on the VE's testimony, the ALJ concluded that Plaintiff could perform her past relevant work as a medical transcriptionist as generally performed.  (AR 21-22; see AR 48.)  Accordingly, the ALJ determined that Plaintiff was not disabled.  (AR 22.)

---

[2] Although Plaintiff alleged disability beginning June 2, 2010 (AR 167, 188), the agency and ALJ determined that she had engaged in substantial gainful activity until February 1, 2011, a finding Plaintiff does not challenge (AR 14-15, 204-10; see AR 214).

1  **V.    DISCUSSION**

2              **The New Evidence Submitted to the Appeals Council**

3                        **Does Not Warrant Reversal**

4       Plaintiff alleges that evidence submitted to the Appeals

5  Council shows that she cannot perform her past relevant work as a

6  medical transcriptionist, contrary to the ALJ's finding that her

7  capacity for sedentary work would permit it.  (J. Stip. at 4-6,

8  13-14.)  Because substantial evidence supports the ALJ's

9  decision, reversal is not warranted.

10      A.   Applicable Law

11      A district court must uphold an ALJ's RFC assessment when

12 the ALJ has applied the proper legal standard and substantial

13 evidence in the record as a whole supports the decision.  Bayliss

14 v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).  The ALJ must

15 consider all the medical evidence in the record and "explain in

16 [his] decision the weight given to . . . [the] opinions from

17 treating sources, nontreating sources, and other nonexamining

18 sources."  §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii); see also

19 §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual

20 functional capacity based on all the relevant evidence in your

21 case record."); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)

22 (RFC must be "based on all of the relevant evidence in the case

23 record").  In making an RFC determination, the ALJ may consider

24 those limitations for which there is support in the record and

25 need not consider properly rejected evidence or subjective

26 complaints.  See Bayliss, 427 F.3d at 1217 (upholding ALJ's RFC

27 determination because "the ALJ took into account those

28 limitations for which there was record support that did not

6

1  depend on [claimant's] subjective complaints"); <u>Batson v. Comm'r</u>
2  <u>of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1197 (9th Cir. 2004) (ALJ not
3  required to incorporate into RFC any findings from treating-
4  physician opinions that were "permissibly discounted").

5      Social Security Administration regulations "permit claimants
6  to submit new and material evidence to the Appeals Council and
7  require the Council to consider that evidence in determining
8  whether to review the ALJ's decision, so long as the evidence
9  relates to the period on or before the ALJ's decision." <u>Brewes</u>
10 <u>v. Comm'r of Soc. Sec. Admin.</u>, 682 F.3d 1157, 1162 (9th Cir.
11 2012); <u>see also</u> §§ 404.970(b), 416.1470(b).  "[W]hen the Appeals
12 Council considers new evidence in deciding whether to review a
13 decision of the ALJ, that evidence becomes part of the
14 administrative record, which the district court must consider
15 when reviewing the Commissioner's final decision for substantial
16 evidence."  <u>Brewes</u>, 682 F.3d at 1163; <u>accord</u> <u>Taylor v. Comm'r of</u>
17 <u>Soc. Sec. Admin.</u>, 659 F.3d 1228, 1232 (9th Cir. 2011); <u>see also</u>
18 <u>Borrelli v. Comm'r of Soc. Sec.</u>, 570 F. App'x 651, 652 (9th Cir.
19 2014) (remand necessary when "reasonable possibility" exists that
20 "the new evidence might change the outcome of the administrative
21 hearing" (internal quotation marks omitted)).

22      B.   <u>Relevant Facts</u>[3]
23     The medical evidence before the ALJ showed successful
24 cataract surgery that restored Plaintiff's vision to 20/30 acuity

25
26
27
28
        [3] Because the parties are familiar with the facts, they are
   summarized here only to the extent relevant to the contested issue.

7

(AR 36, 295-98, 487-88, 510);[4] effective treatment for diabetes and related impairments, including a left-hand abscess and right-foot diabetic ulceration (see, e.g., AR 318-19, 399, 422, 506, 512, 514-15); and medication for sensory neuropathy and osteoarthritis (see, e.g., AR 401, 485, 494, 512).[5]  The ALJ also reviewed treatment records and a June 13, 2012 letter from Dr. Cynthia McKinney, Plaintiff's primary-care physician.  (See AR 34, 392, 484-538.)  In the letter, Dr. McKinney noted Plaintiff's treatment for a "diabetic foot ulcer" and need for proper foot care and further evaluation, particularly given the walking requirements of her job as a home health aide.  (AR 392.)  She did not, however, opine that Plaintiff could not perform that work or any other.  (See id.)

On March 6, 2013, after the ALJ had issued his decision, Dr. McKinney completed a preprinted Manipulative Limitations Medical Source Statement form for Plaintiff.  (AR 540-41.)  Dr. McKinney checked boxes and filled in blanks indicating that Plaintiff experienced tenderness, pain, paresthesia, muscle weakness, limitation of motion, joint deformity, and joint swelling in her hands.  (AR 540.)  Dr. McKinney characterized Plaintiff's paresthesia as "numbness" and indicated on a drawing of the hands that it affected her fingertips.  (Id.)  Dr. McKinney opined that Plaintiff could lift up to 15 pounds; grasp,

---

[4] At the hearing, Plaintiff acknowledged that "at this time" her vision was "okay."  (AR 37.)

[5] Although the ALJ found that Plaintiff had received treatment for mental impairments (AR 15-17; see, e.g., AR 417, 501, 512), his assessment of those impairments as nonsevere is not raised in the Joint Stipulation or in the new evidence at issue.

turn, and twist objects with either hand 15 percent of the time;
perform fine manipulations with her fingers 10 percent of the
time; reach in front of her body with her arms 20 percent of the
time; and reach overhead 15 percent of the time. (AR 541.) The
doctor did not give any indication that the limitations applied
earlier than the date of the form. (See AR 540-41.)

C.   <u>Discussion</u>

Plaintiff contends that Dr. McKinney's later findings
preclude her from performing her past relevant work as a medical
transcriptionist because the job requires frequent handling and
fingering, meaning that those activities are required one- to
two-thirds of the time.[6]  (J. Stip. at 5); <u>see</u> DOT 201.362-014,
<u>available at</u> 1991 WL 671668.  Remand is not necessary because Dr.
McKinney's brief, unsupported statement did not undermine the
ALJ's determination that Plaintiff was not disabled. (See AR 20-
21); <u>see</u> <u>Boyd v. Colvin</u>, 524 F. App'x 334, 336 (9th Cir. 2013)
(remand not warranted when new evidence did not "sufficiently
undermine[]" ALJ's ruling).

Dr. McKinney's March 2013 statement did not identify any
diagnoses relevant to the noted symptoms and limitations on
grasping, turning, twisting, and performing fine manipulations.
(<u>See</u> AR 540-51.)  Of Plaintiff's alleged impairments, arthritis
and neuropathy were the ones likely to limit manual strength and

---

[6] In a March 2011 Work History Report, Plaintiff indicated
that the job required her to sit and "write, type, or handle small
objects" for eight hours each day. (AR 218.)

dexterity.[7]  The ALJ considered evidence of these impairments, however, and found that none limited Plaintiff's ability to use her hands.

With respect to Plaintiff's arthritis, the ALJ noted her May 2011 complaints of "body pain" and of pain and decreased range of motion in her hands, which emergency-room doctors diagnosed as symptoms of arthritis.  (AR 18; see AR 355-56, 370-71, 392.)  A March 15, 2012 hand x-ray confirmed "moderate first carpometacarpal osteoarthritis."  (AR 18; see AR 401.)  The ALJ noted, however, that despite arthritis, Plaintiff demonstrated largely normal musculoskeletal function.  (AR 18-19; see, e.g., AR 511 (in Apr. 2012, Plaintiff denying bone or joint symptoms), 411 (in May 2012, noting normal range of motion and function, without pain, in upper and lower extremities), 505 (in Sept. 2012, noting normal musculature, no joint deformities or abnormalities, and normal range of motion in all four extremities).  But see AR 355 (in May 2011, noting full range of motion in neck and normal neurological exam but decreased range of motion in lumbar spine and hands).)  More to the point, with the exception of a May 2011 finding of decreased range of motion in Plaintiff's hands, the record reflected neither Plaintiff's complaints nor doctors' findings that her arthritis limited her ability to use her hands.  The ALJ thus found that Plaintiff's arthritis was not severe, a finding Plaintiff has not challenged.

---

[7]  Aside from arthritis and neuropathy, the only hand impairment for which Plaintiff provided treatment records was a left-hand abscess, which was incised and drained in March 2012 and "healing well" in April 2012.  (AR 399, 514.)

See Bowen v. Yuckert, 482 U.S. 137, 146 (1987) (noting that impairment is severe if it significantly limits claimant's ability to work); §§ 404.1520(c), 416.920(c) (same).

The ALJ found evidence of early sensory neuropathy but noted that the record did not reflect advanced neuropathy symptoms, such as motor or gait dysfunction.  (AR 17, 21; see also 469-83 (from July through Nov. 2012, noting decreased sensation and recommending customized diabetic shoes and regular foot checks).) The ALJ also found that Plaintiff's testimony that neuropathy caused numbness, tingling, and pain throughout her body was inconsistent with both her report to her primary-care doctor of only a burning sensation and her testimony that prescribed medications helped her symptoms.  (AR 21; see AR 34-35 (testifying that medications "help[ed]" conditions), 42 (testifying that neuropathy caused tingling, pain, and numbness all over her body), 499 (in Sept. 2012, noting "burning of extremities").)[8]  The ALJ therefore found that although Plaintiff's early sensory neuropathy was a severe impairment, limiting her to only two hours of standing and walking in an eight-hour workday, it did not prevent her from working.  (AR 17, 21; see also AR 21 (ALJ discounting state-agency physicians' opinions because they had no access to records concerning sensory

---

[8] The record reflects Plaintiff's complaints of body pain, including on the day she reported a burning sensation in her extremities (AR 499), and although the ALJ and Plaintiff's caregivers generally treated that as indicative of arthritis or renal dysfunction (see AR 18, 20, 355-56, 370-71, 392), Plaintiff may have attributed her body pain to neuropathy.  Plaintiff does not challenge the ALJ's credibility finding, however, which, as discussed further below, was supported by more than just this finding.  (See AR 21.)

11

1    neuropathy).)[9]

2        Not only did the medical evidence before the ALJ not

3    indicate significant manual limitations, but Plaintiff testified

4    that the only thing preventing her from doing her past work as a

5    medical transcriptionist was her inability to secure such work

6    because it was allegedly no longer widely available in

7    California. (See AR 36 (testifying that she had sought medical

8    transcription work since 2007 without success).)[10] Moreover, the

9    ALJ found that Plaintiff's statements about her symptoms and

10   limitations were sometimes inconsistent or inaccurate,

11   undermining her credibility.[11] For instance, Plaintiff alleged

12   disability beginning in June 2010 but continued doing substantial

13   gainful activity through February 1, 2011, see supra note 2; she

14   alleged impaired vision but testified that she had 20/30 vision

15   following cataract surgery (AR 36, 191); she characterized Dr.

16   McKinney's June 2012 letter, which advised that Plaintiff's

17   diabetes-related foot issues required further evaluation and

18   might be worsened by walking-intensive work, as indicating that

19

20       [9] Neither the medical expert nor any state-agency physician
     identified any severe impairments. (See AR 44-46, 55-56, 68-69,
21   83-84.)

22       [10] As the Commissioner notes (J. Stip. at 11), a claimant is
     not disabled under the Social Security regulations if she is able
23   to do her past relevant work even if that work does not exist in
     significant numbers in the national economy, see Barnhart v.
24   Thomas, 540 U.S. 20, 29 (2003); see also §§ 404.1520(a)(4)(iv),
     416.920(a)(4)(iv), 404.1560(b), 416.960(b).
25

26       [11] Although Plaintiff contends that her credibility is not at
     issue (J. Stip. at 13), the Court must consider all of the ALJ's
27   bases for rejecting her claim that she cannot do her past work in
     order to determine whether the new evidence would undermine his
28   conclusion.

12

1 Plaintiff could not do her past relevant work at all (AR 35, 40,
2 392); and, as noted above, she offered arguably inconsistent
3 statements regarding her neuropathy symptoms.  <u>See</u> <u>Tommasetti v.</u>
4 <u>Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008) (noting that in
5 assessing credibility, ALJ may use "ordinary techniques of
6 credibility evaluation," including consideration of inconsistent
7 statements).

8       Thus, although the ALJ credited Plaintiff's allegations
9 concerning symptoms that limited her ability to stand and walk,
10 he accurately found that there was no evidence to support
11 additional limitations.  (AR 21.)  Nor is it reasonably possible
12 that the ALJ would have altered this conclusion based on Dr.
13 McKinney's brief, undetailed, unsupported statement.

14       Dr. McKinney's statement consisted of a two-page, five-
15 question preprinted form, on which she checked boxes and filled
16 in a few blanks.  (AR 540-41.)  As an initial matter, although
17 Plaintiff asserts that Dr. McKinney's statement was
18 "chronologically relevant" (J. Stip. at 6), she did not indicate
19 when the symptoms and limitations indicated therein arose, so it
20 is unclear whether her findings concerned the period adjudicated
21 by the ALJ, <u>see</u> §§ 404.970(b), 416.1470(b) (noting that Appeals
22 Council will consider additional evidence only when it relates to
23 period on or before date of ALJ's decision); <u>Brewes</u>, 682 F.3d at
24 1162 (noting that administrative record includes evidence
25 submitted to and considered by Appeals Council only if it relates
26 to period on or before ALJ's decision).

27       Indeed, as noted above, Dr. McKinney noted only symptoms and
28 limitations, not even tying those to particular diagnoses.  She

                                  13

1  indicated no basis for her findings, and her own treatment notes

2  contained no indication that Plaintiff suffered such significant

3  symptoms and limitations.  Treatment notes from Dr. McKinney's

4  clinic noted Plaintiff's hand arthritis (AR 487, 492, 495, 512),

5  neurological symptoms caused by diabetes (AR 500, 506), and

6  prescriptions to treat neuropathy and arthritis (AR 485, 494; see

7  also AR 43-44).  But other than Plaintiff's September 2012

8  complaints of "generalized body aches" and "burning of

9  extremities" (see AR 499), clinic records note no complaints that

10 could be attributed to arthritis or neuropathy, let alone any

11 indication that Plaintiff's impairments caused her disabling

12 discomfort or physical limitations.  In fact, as the ALJ noted

13 (AR 18, 21), treatment notes from Dr. McKinney's clinic

14 consistently reported that upon physical examination, Plaintiff

15 showed "[n]ormal musculature, no joint deformities or

16 abnormalities, [and] normal range of motion for all four

17 extremities for [her] age" (AR 493, 500, 505, 520) and was

18 "[n]egative for bone/joint symptoms and weakness" (AR 515),

19 suggesting that neither arthritis nor neuropathy had

20 significantly impacted her range of motion.  Nor did the record

21 include any other indication of significant symptoms attributable

22 to these impairments.

23      Thus, the ALJ could properly have rejected Dr. McKinney's

24 statement as conclusory, inadequately supported, and inconsistent

25 with both her own treatment notes, which reflected conservative

26 treatment of apparently mild symptoms, and the other medical

27 evidence of record.  See Thomas v. Barnhart, 278 F.3d 947, 957

28 (9th Cir. 2002) (ALJ "need not accept the opinion of any

14

1  physician, including a treating physician, if that opinion is
2  brief, conclusory, and inadequately supported by clinical
3  findings"); accord Batson, 359 F.3d at 1195 (same); Valentine v.
4  Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009)
5  (contradiction between treating physician's opinion and his
6  treatment notes constitutes specific and legitimate reason for
7  rejecting treating physician's opinion); Rollins v. Massanari,
8  261 F.3d 853, 856 (9th Cir. 2001) (same).

9      Particularly given the ALJ's finding that Plaintiff was less
10 than credible, a form noting Plaintiff's alleged symptoms and
11 purporting to translate those into limitations, without any
12 diagnostic support, was of little evidentiary value.  See
13 Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (when
14 ALJ properly discounted claimant's credibility, he was "free to
15 disregard" doctor's opinion that was premised on claimant's
16 subjective complaints); see also Molina v. Astrue, 674 F.3d 1104,
17 1111 (9th Cir. 2012) (ALJ may "permissibly reject" "check-off
18 reports that [do] not contain any explanation of the bases of
19 their conclusions" (internal quotation marks omitted)); De Guzman
20 v. Astrue, 343 F. App'x 201, 209 (9th Cir. 2009) (same).

21     Thus, when Dr. McKinney's statement is considered in the
22 context of the record as a whole, substantial evidence still
23 supports the ALJ's finding that Plaintiff was capable of the full
24 range of sedentary work with no additional limitations.  Because
25 Dr. McKinney's statement does not render the ALJ's RFC assessment
26 unsupported by substantial evidence, remand is not warranted.
27 See Bayliss, 427 F.3d at 1217; Marin v. Astrue, No. CV 11-09331
28 AJW, 2012 WL 5381374, at *6 (C.D. Cal. Oct. 31, 2012) (declining

to reverse when new evidence submitted to Appeals Council "does not alter the conclusion that the ALJ's decision was supported by substantial evidence in the record as a whole").

**VI.   CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[12] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice.  IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 17, 2015

_____

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[12]  That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."